1

2

3

4

5

6

7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 LINO RAMOS,                           No. CIV S-06-0974-FCD-CMK-P

12          Petitioner,

13    vs.                           <u>FINDINGS AND RECOMMENDATIONS</u>

14 TOM L. CAREY, et al.,

15          Respondents.

16 _____/

17          Petitioner, a state prisoner proceeding with counsel, brings this petition for a writ

18 of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are Petitioner's petition

19 for a writ of habeas corpus (Doc. 1), Respondent's response (Doc. 13), and Petitioner's traverse

20 (Doc. 22).[1]

21 / / /

22 / / /

23 / / /

24 _____

25    [1]    The court also requested and received additional briefing on the applicability of
<u>Hayward v. Marshall</u>, 512 F.3d 536 (9th Cir. 2008), <u>rehearing en banc granted</u>, 527 F.3d 797 (9th
26 Cir. 2008) (Docs. 26, 27).

# I. BACKGROUND

1

2          Petitioner pleaded guilty to second degree murder and was sentenced on July 12,

3    1991, to a total term of 17 years to life.  Petitioner states his minimum eligible parole date was

4    June 2, 2001.  He had his initial parole consideration hearing on January 11, 2001.  The Board of

5    Prison Terms ("Board") denied Petitioner a parole release date for three years.  He did not appeal

6    that initial decision.  Petitioner appeared before the Board for his first subsequent parole

7    consideration hearing on May 25, 2004.  Petitioner was again denied a parole release date for

8    another three years.  The 2004 parole denial is the subject of the current petition.

9          In it's decision, the Board denied Petitioner parole for three years citing the

10   following reasons: (1) the facts of Petitioner's commitment offense; (2) Petitioner's prior

11   criminal and social history; (3) Petitioner's prison disciplinaries and failure to program; and (4)

12   Petitioner's unfavorable psychological report.  Specifically, the board found:

13                Since his last hearing the prisoner has received additional
             disciplinaries.  Sexual misconduct on 8-29; 3-4-02 for smoking in
14           a State building; possession of dangerous contraband on 3-29-01
             and an array of 128's.  So certainly his behavior have (sp) not been
15           the best. . . . The psychological report dated 3-19-04 by Dr. Van
             Couvering is not supportive of release at this time – rates the
16           prisoner as a moderate degree of threat to the public.

17   (Board Decision at 3 (attached to Answer, Ex. B, parole hearing transcript at 43))

18          Petitioner filed a petition for a writ of habeas corpus in the Alameda County

19   Superior Court challenging the 2004 denial of parole.  In a decision denying the petition, the state

20   court found the

21                [p]etition fail[ed] to state a prima facie case for relief.  Even
             though Petitioner has submitted documents in support of his
22           Petition, review of the transcript and documents pertaining to the
             May 25, 2004 hearing, indicate that there was no abuse of
23           discretion by the Board of Prison Terms.  The record presented to
             this Court for review demonstrates that there was certainly some
24           evidence, including, but not limited to the committing offense,
             Petitioner's disciplinary record, and Petitioner's participation in
25           rehabilitation programs, to support the Board's decision.  There is

26   / / /

2

1          nothing in the record that indicates that the Board's decision was
2          arbitrary or capricious, nor the Petitioner's equal protection or due
        process rights were violated.

3  (Response, Exhibit E).

4        Subsequent habeas petitions challenging the denial of parole were denied by the

5  California Court of Appeal and California Supreme Court without comment or citation.

6  Respondent concedes that Petitioner's claims are exhausted.

7

8  **II.  STANDARDS OF REVIEW**

9        Because this action was filed after April 26, 1996, the provisions of the

10  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively

11  applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.

12  (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997).  The AEDPA does not, however, apply in all

13  circumstances.  When it is clear that a state court has not reached the merits of a petitioner's

14  claim, because it was not raised in state court or because the court denied it on procedural

15  grounds, the AEDPA deference scheme does not apply and a federal habeas court must review

16  the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the

17  AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim

18  under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002)

19  (holding that, where state court denied petitioner an evidentiary hearing on perjury claim,

20  AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary

21  hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (reviewing petition de

22  novo where state court had issued a ruling on the merits of a related claim, but not the claim

23  alleged by petitioner).  When the state court does not reach the merits of a claim,  "concerns

24  about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

25  / / /

26  / / /

1       Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

2  not available for any claim decided on the merits in state court proceedings unless the state

3  court's adjudication of the claim:

4               (1) resulted in a decision that was contrary to, or involved an
                 unreasonable application of, clearly established Federal law, as determined

5               by the Supreme Court of the United States; or

6               (2) resulted in a decision that was based on an unreasonable
                 determination of the facts in light of the evidence presented in the State

7               court proceeding.

8  28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

9  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).  Thus,

10  under § 2254(d), federal habeas relief is available only where the state court's decision is

11  "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

12  standards, "clearly established law" means those holdings of the United States Supreme Court as

13  of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

14  (citing Williams, 529 U.S. at 412) .  "What matters are the holdings of the Supreme Court, not

15  the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en

16  banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas

17  relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742,

18  753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).

19  For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

20  to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a

21  state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

22  contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

23  created by state conduct at trial because the Court had never applied the test to spectators'

24  conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

25  holdings.  See Carey, 549 U.S. at 74.

26  / / /

1     In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

2  majority of the Court), the United States Supreme Court explained these different standards.  A

3  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

4  the Supreme Court on the same question of law, or if the state court decides the case differently

5  than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

6  court decision is also "contrary to" established law if it applies a rule which contradicts the

7  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

8  that Supreme Court precedent requires a contrary outcome because the state court applied the

9  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

10  Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

11  id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

12  determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,

13  1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

14  case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

15  is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

16  (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

17     State court decisions are reviewed under the far more deferential "unreasonable

18  application of" standard where it identifies the correct legal rule from Supreme Court cases, but

19  unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

20  510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

21  that federal habeas relief may be available under this standard where the state court either

22  unreasonably extends a legal principle to a new context where it should not apply, or

23  unreasonably refuses to extend that principle to a new context where it should apply.  See

24  Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

25  decision is not an "unreasonable application of" controlling law simply because it is an erroneous

26  or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found
even where the federal habeas court concludes that the state court decision is clearly erroneous.
See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper
deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.
As with state court decisions which are "contrary to" established federal law, where a state court
decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless
unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

        The "unreasonable application of" standard also applies where the state court
denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d
848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).   Such decisions
are considered adjudications on the merits and are, therefore, entitled to deference under the
AEDPA.  See Green v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2002); Delgado, 223 F.3d at 982.
The federal habeas court assumes that state court applied the correct law and analyzes whether
the state court's summary denial was based on an objectively unreasonable application of that
law.  See Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

## III.  DISCUSSION

        In his petition, Petitioner contends that the Board failed to support it's conclusion
that his commitment offense was especially cruel, callous, calculated, executionary-style and
inexplicable.  In addition he claims the Board failed to consider substantial evidence supporting
parole suitability and that the Board "is countermanding the purpose of the determinate sentence
act . . . to provide uniform terms for offenses of similar gravity and magnitude."  In the traverse,
counsel clarifies the claims Petitioner raised in his pro se petition, arguing that Petitioner's due
process rights were violated because the Board's decision did not meet the "some evidence"
standard and countermanded the purpose of the determinate sentencing act.

/ / /

A.    **Denial of Parole**

1.    Applicable Law

In Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), the Ninth Circuit held that California's parole statute does, in fact, create a federally cognizable liberty interest. See id. at 1127-28.  On the merits, the court also rejected the argument that the "some evidence" standard does not apply in the parole context.  See id. at 1128-29.  Under Superintendent v. Hill, 472 U.S. 445, 455 (1985), due process requires that a prison disciplinary hearing decision be based on "some evidence" in the record as a whole which supports the decision.  This standard, which the court has also applied in the parole context, is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached."  Id. at 455-56.  Additionally, this standard requires that the evidence underlying the Board's decision must have some indicia of reliability.  See Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003).

In Sass, the Ninth Circuit also addressed the argument that the requirement of "some evidence" in the parole context has not been clearly established by the Supreme Court. The Ninth Circuit held:

> Hill's some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." (citation omitted).  Hill held that although this standard might be insufficient in other circumstances, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." (citation omitted).  To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest – that in parole – without support or in an otherwise arbitrary manner.  We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

> Sass, 461 F.3d at 1129.

/ / /

/ / /

/ / /

1    Because Sass and Biggs are binding precedent, this court must also conclude the

2 "some evidence" standard is clearly established law for purposes of habeas corpus relief under

3 AEDPA.[2]  Therefore, this court will apply the "some evidence" standard on the merits.  See id.;

4 see also Irons v. Carey, 505 F.3946, 851 (9th Cir. 2007).

5    In assessing whether the "some evidence" standard has been met, the analysis is

6 framed by the state's statutes and regulations governing parole suitability.  See Biggs, 334 F.3d at

7 915.  Thus, this court looks to California law to determine the findings that are necessary to deem

8 a prisoner unsuitable for parole and then reviews the record to determine whether there is "some

9 evidence" supporting the decision to deny parole.  Under California Penal Code § 3041(b) and

10 California Code of Regulations, Title 15, § 2402(a), once the inmate has served the minimum

11 term required, a release date shall be set unless release currently poses an unreasonable risk of

12 danger to society.[3]  It follows from this that, even though there may be some evidence that a

13 / / /

14 / / /

15

16    [2]    The court is aware of the Ninth Circuit's holding in Hayward v. Marshall, 512
    F.3d 536 (9th Cir. 2008), rehearing en banc granted, 527 F.3d 797 (9th Cir. 2008), where the
17 court applied the "some evidence" standard as clearly established law and concluded that habeas
    relief was granted because the continued reliance on immutable factors violated due process.
18 However, that case is not binding precedent pending issuance of the mandate.  See Hayward, 527
    F.3d 797 ("The three-judge panel opinion shall not be cited as precedent by or to any court of the
19 Ninth Circuit").  Among the issues being considered on rehearing is whether there is any clearly
    established law in the parole context.  If the Ninth Circuit ultimately concludes that there is no
20 clearly established law, habeas relief would be unavailable.  See Moses v. Payne, 555 F.3d 742,
    753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 128 S. Ct. 743, 746 (2008)).

21    [3]    The regulations set forth various circumstances which tend to show suitability and
    others which tend to show unsuitability.  See Cal. Code Regs., tit 15 § 2402(c)-(d).  Under
22 § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment
    offense, where the offense was committed in an especially heinous, atrocious, or cruel manner;
23 (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others;
    (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems
24 related to the offense; and (6) serious misconduct while in prison.  Circumstances tending to
    show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with
25 others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes;
    (5) realistic plans for release; and (6) participation in institutional activities indicating an
26 enhanced ability to function within the law upon release.  See Cal. Code Regs., tit. 15 § 2402(d).

1  particular unsuitability factor exists, this does not necessarily mean that there is some evidence

2  of a current unreasonable risk of danger to the community if the inmate is released.[4]

3          In addition to concluding that due process requires "some evidence" in the parole

4  context based on Hill, the Ninth Circuit has addressed whether the continued reliance on

5  immutable factors satisfies this standard and whether continued reliance solely on such factors

6  ignores the goal of rehabilitation and violates due process.  In Biggs, where the petitioner was

7  challenging the first denial of parole based solely on the facts of the commitment offense, the

8  Ninth Circuit concluded that the denial was based on some evidence – the facts of the

9  commitment offense – even though other findings made by the Board in Biggs' case lacked

10  evidentiary support.  In dicta, however, the court acknowledged that, sometime in the future, the

11  continued reliance on immutable factors could violate due process.  See Biggs, 334 F.3d at 917.

12  From this, it is clear that the Board may rely solely on immutable factors for the first denial of

13  parole given the minimal passage of time between the commitment offense and parole decision.

14          As to subsequent denials of parole and the continued reliance on immutable

15  factors, the Ninth Circuit has not drawn any bright line.  In Sass, where the petitioner was

16  challenging the third denial of parole, the Ninth Circuit affirmed the denial of the habeas petition.

17  See Sass, 461 F.3d at 1129.  The court did not conclude that reliance on immutable factors (the

18  facts of the commitment offense and the petitioner's prior criminal history) – even for a third

19  time – violated due process.  See id.  The court held:

20          In making a judgment call based on evidence of pre-conviction
           recidivism and the nature of the conviction offense, the Board cannot be
21          categorized as acting arbitrarily.  Here, the Board based its finding that
           Sass was unsuitable for parole on the gravity of his convicted offenses in
22          combination with his prior offenses.  These elements amount to some
           evidence. . . .  Consequently, the state court decisions upholding the

23

24          [4]      The California Supreme Court has held that, under the regulations, the denial of
   parole may be predicated on the commitment offense only where the Board can point to factors
25  beyond the minimum elements of the crime that demonstrate that, at the time of the suitability
   hearing, the inmate will present an unreasonable risk of danger to society if released.  See In re
26  Dannenberg, 34 Cal.4th 1061, 1071 (2005).

denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.

Id.

In Irons v. Carey, 505 F.3d 846 (9th Cir. 2007), rehearing en banc denied, 505 F.3d 951 (9th Cir. 2007), the Ninth Circuit reversed the district court's grant of a habeas petition challenging the eighth denial of parole, concluding that the facts of the petitioner's commitment offense alone constituted some evidence of unsuitability under California law.  The court in Irons noted that none of the Ninth Circuit's cases regarding reliance solely on immutable factors to deny parole involved inmates who had served the minimum terms of their sentences. Specifically, the court observed:

> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence.  Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125.  All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

> Id. at 853-54.

As to the continued reliance solely on immutable factors, the court noted in dicta:

> Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation.  In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole.  We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

> Id. at 854.

///

1    From <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u> the court can conclude that, where the challenged

2  parole denial occurs before the petitioner has served the minimum term of his sentence, the

3  continued reliance solely on immutable factors to deny parole for up to eight times does not

4  violate due process.  It may be that, so long as the inmate has not served his minimum sentence,

5  the Board may deny parole any number of times based solely on immutable factors.[5]  Where the

6  inmate has served the minimum term, the following rules apply:  (1) California law creates a

7  liberty interest in parole for prisoners who have served the minimum sentence, <u>see</u> <u>Sass</u>, 461 F.3d

8  at 1127-28; <u>Irons</u>, 505 F.3d at 853-54; (2) the Board's decision to deny parole must be supported

9  by  "some evidence" that the prisoner's release would have posed an unreasonable risk of danger

10  to the community at the time, <u>see</u> <u>Sass</u>, 461 F.3d at 1128-29; and (3) the evidence relied upon by

11  the Board must have some indicia of reliability, <u>see</u> <u>Biggs</u>, 334 F.3d at 915.  In some cases where

12  the minimum term has been served, the continued reliance on immutable factors to deny parole

13  may violate due process.  <u>See</u> <u>id.</u> at 917; <u>see also</u> <u>Irons</u>, 505 F.3d at 854.

14    2.    <u>Analysis</u>

15    Based on the principles discussed above, the question for this court is whether the

16  state court's determination that the Board's decision was based on "some evidence" of a risk of

17  danger to the community in 2005 is an unreasonable application of this standard.

18    Initially, the court observes that this case does not present the situation of reliance

19  solely on immutable factors.  The Board stated several reasons in support of the decision not to

20  grant Petitioner a parole date, including the facts of the offense, his escalating pattern of conduct,

21  his lack of programming, his prison disciplinary record, his psychological report, and his

22  maturity.   The court, however, must find that these reasons bear some indicia of reliability.

23  / / /

24

25    [5]    Such a reading of the cases would be consistent with California law, which does
26  not require that a parole release date even be considered until the inmate has served the minimum
   term of his sentence.  <u>See</u> Cal. Penal Code § 3041(b) and Cal. Code of Regs., Title 15, § 2402(a).

1          In addition to the facts of Petitioner's commitment offense, the Board reviewed

2  the prison disciplinary actions Petitioner has received during his incarceration.  The board found

3  that during Petitioner's incarceration, he has received 16 Rule Violation Reports, "CDC 115's",

4  the last one on April 29, 2002, and 26 counseling chronos, "CDC 128's", the last one on February

5  14, 2004.[6]  The Board went through and discussed with Petitioner a number of these offenses.

6  Although several of these rule violations were non-serious, such as violating grooming standard

7  and inappropriately touching his wife during visits, they tend to show Petitioner's disrespect for

8  rules, and inability to follow regulations.  In addition, although Petitioner had been advised by

9  the prior Board, when he was denied parole in 2001, to remain disciplinary-free, he has failed to

10  do so.  The Board stated he received three disciplinaries since his last hearing, but it appears to

11  the undersigned that they actually identified eleven separate disciplinary actions since 2001.

12  Petitioner acknowledged at the hearing that he had in fact received such disciplinary actions. The

13  Board's reliance on Petitioner's disciplinary history certainly bears an indicia of reliability.

14          In addition, the Board relied on the psychological report by Dr. Van Couvering.

15  The Board relied on Dr. Van Couvering's conclusion that Petitioner retains a moderate degree of

16  threat to the public.  Petitioner argues this conclusion is not supported by the report.  However,

17  reviewing the report, the undersigned finds that it does.  Dr. Van Couvering stated that Petitioner

18  "showed good judgment and anticipation of consequences, but there remain some issues of

19  impulse control."  (Petition, Ex. C, at 99).  She also stated that Petitioner "has had a problem in

20  accepting accountability for his behavior in the past," although she acknowledged Petitioner has

21  had marked improvement in his conduct over the past year.  (Petition, Ex. C, at 100).  Given Dr.

22  Van Couvering's statement that Petitioner's "life crime was an impulsive act," these reasons

23

24        [6]    Rule Violation Reports, CDC Form 115, documents misconduct believed to be a

25  violation of law or otherwise not minor in nature.  <u>See</u> Cal. Code Regs., Tit. 15, § 3312(a)(3); <u>In re Gray</u>, 151 Cal. App. 4th 379, 389 (2007).  Custodial Counseling Chronos, CDC Form 128-A, documents incidents of minor misconduct.  <u>See</u> Cal. Code Regs., Tit. 15, § 3312(a)(2); <u>In re</u>

26  <u>Gray</u>, 151 Cal. App. 4th 379, 389 (2007).

1  support her conclusion that Petitioner remains moderately dangerous to the community.

2     Petitioner contends that his due process rights were violated because the Board

3  failed to support its conclusion that his offense was especially cruel, callous, calculated,

4  execution style, or inexplicable compared to other second degree murder offenses, and that the

5  Board failed to consider substantial evidence demonstrating his suitability for parole.  However,

6  the undersigned finds the opposite.  The Board acknowledged Petitioner had met some of the

7  criteria, including his parole plans, family support, and acknowledged his employment and

8  religious work.  The Board stated Petitioner had realistic parole plans and good family support.

9  They commended him for obtaining his GED, and acknowledged the laudatory chronos in his file

10 regarding his hard work and his participation in his faith.  However, they weighed these positive

11 aspects with the reasons weighing against granting parole, and determined that these positive

12 aspects were outweighed.

13    Petitioner's argument that the Board failed to support it's conclusion that his

14 commitment offense was especially cruel and callous, calculated and/or execution-style are

15 similarly unavailing.  This argument may have been more effective if the Board was solely

16 relying on Petitioner's commitment offense.  However, his commitment offense was not the only

17 justification provided in denying Petitioner a parole date.  In addition, although the Ninth Circuit

18 has indicated that at some point, reliance solely on immutable factors to deny parole may at some

19 point violate a prisoner's due process rights, the undersigned does not find Petitioner's due

20 process rights were violated here.  This is not a situation where Petitioner has been denied parole

21 several times, with the Board relying solely on the unchanging facts of the commitment offense.

22 This was only Petitioner's second parole suitability hearing, and the Board relied on additional

23 factors in rendering their decision.

24    The California Superior Court decided that "some evidence" supported the

25 Board's finding of unsuitability.  This decision was neither contrary to nor an unreasonable

26 application of clearly established United States Supreme Court law.  There was "some evidence"

1   before the Board which could indicate Petitioner's release would be an unreasonable risk to

2   public safety.

3

4                                **IV.  CONCLUSION**

5              Based on the foregoing, the undersigned recommends that Petitioner's petition for

6   writ of habeas corpus be denied.

7              These findings and recommendations are submitted to the United States District

8   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

9   after being served with these findings and recommendations, any party may file written

10  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

11  Findings and Recommendations."  Failure to file objections within the specified time may waive

12  the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13

14    DATED: August 6, 2009

15

16                                _____
                                  **CRAIG M. KELLISON**
17                                UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

                                       14